UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

JACKIE RUTLAND, EXECUTRIX OF THE
ESTATE OF JAMES F. DEATON, JR., AND
MICHAEL SHANE DEATON, INDIVIDUALLY AND
ON BEHALF OF ALL WRONGFUL DEATH
BENEFICIARIES OF JAMES F. DEATON, JR.                              PLAINTIFFS

V.                                         CIVIL ACTION NO. 3:08CV763 DPJ-FKB

MALCOLM MCMILLIN, SHERIFF OF HINDS COUNTY,
MISSISSIPPI, INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITY; HINDS COUNTY, MISSISSIPPI;
GREG LEWIS, INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITY; MICHAEL HUFF, INDIVIDUALLY AND
IN HIS OFFICIAL CAPACITY; MIKE WILSON, JR.,
INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY;
BRIAN MCCURLEY, INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITY; TRUDY BOMER, INDIVIDUALLY AND
IN HER OFFICIAL CAPACITY; DR. LAWRENCE SUTTON,
INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY                          DEFENDANTS

ORDER

This civil rights action is before the Court on Defendant Malcolm McMillin's Motion for Summary Judgment [94] as to all claims asserted against him in his individual capacity. The Court, having considered the memoranda and applicable authority, finds McMillin is entitled to qualified immunity and that his motion should be granted.

I.   Facts and Procedural History[1]

On Friday, December 14, 2007, James F. Deaton, Jr. began weekend visitation with his eight-year-old son at Deaton's home. That afternoon, Deaton's half brother took the child to spend the night with him. But by that evening, a confused Deaton contacted Natalie Deaton, the

---

[1] The facts are presented in the light most favorable to Plaintiffs and largely come from Plaintiffs' Response [128] and supporting affidavits and Defendant's Motion [94] and supporting affidavits.

child's mother, asking about the child's whereabouts.[2] Natalie called "911" and immediately drove to Deaton's home where she met several Hinds County Sheriff's Department deputies. Together, they searched Deaton's home for the child without success. The deputies then instructed Natalie to remain outside in a patrol car, leaving them alone inside the home with Deaton for more than an hour.

The deputies again searched Deaton's home, this time without Natalie's assistance, and found a gun. Greg Lewis Aff. ¶ 5. Because Deaton was a convicted felon in possession of a firearm, deputies placed him under arrest and contacted Sgt. Michael Huff of the gun interdiction unit. *Id.* Plaintiffs contend that Huff was a "rogue cop" with a history of using excessive force. Approximately two hours after Natalie first arrived, deputies asked her to again enter the home to search for the child. This time, she saw Deaton "kneeling on the floor with his hands handcuffed behind his back . . . [h]is head was slouched down and he was spitting blood from his mouth." Natalie Deaton Aff. ¶ 8. At around 1:00 a.m. on Saturday, December 15, Natalie and the deputies learned that the child was with Deaton's half brother. The deputies then transported Deaton to the Hinds County Detention Center.

Deaton remained in custody for three days. On December 18, Sgt. Trudy Bomer contacted Deaton's mother, Johnnie, and told her that Deaton had been released, was ill, and needed to be picked up and taken to the hospital. Johnnie Deaton Aff. ¶ 4. When Johnnie saw her son, he was "waving his hands in the air and talking incoherently." Id. ¶¶ 5, 6. He had vomited on himself and had two large, bloody knots on the back of his head, a swollen nose, and

---

[2] From the record evidence, it appears that Deaton had a history of alcohol abuse, which may account for his inability to recall that the child left with Deaton's half-brother.

cuts and bruises on his arms.  Johnnie immediately transported Deaton to the hospital, where he was admitted to the Intensive Care Unit.  Hospital staff reported that Deaton exhibited multiple fractures, a closed-head injury, and signs of malnutrition or starvation.  *Id.* ¶ 7.  Deaton's adult son, Shane Deaton, observed bruises on his father's arms, legs, and chest; a black eye; and "what appeared to be marks from an electric stun gun on his back."  Shane Deaton Aff. ¶ 7.  Deaton told his son that the deputies beat and kicked him at his home before taking him to the Hinds Count Detention Center.  *Id.* ¶ 8.  Deaton remained at the hospital until his death one week later on Christmas day.

Plaintiffs filed this § 1983 action against Hinds County, Sheriff Malcolm McMillin, in his individual and official capacities, several deputies employed by the Hinds County Sheriff's Department, and Dr. Lawrence Sutton, a physician at the Hinds County Detention Center.  Plaintiffs assert that Defendants beat, arrested, detained, and denied Deaton medical care, all in violation of his constitutional rights.  Although they concede that Defendant McMillin had no personal involvement in these events, Plaintiffs have asserted claims against McMillin in his individual capacity based on various theories of supervisory liability.

These facts, if substantiated, are disturbing.  But the issue before the Court is whether Defendant McMillin is entitled to qualified immunity from Plaintiffs' federal claims and immunity from state law claims based on various immunity provisions of the Mississippi Tort Claims Act, particularly Mississippi Code Annotated sections 11-46-5 through 11-46-9.

II.     Standards

    A.     Summary Judgment

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact.  *Id.* at 323.  The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."  *Id*. at 324.  Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial.  *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts."  *Little*, 37 F.3d at 1075.  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150 (2000).

B.   Qualified Immunity

Qualified immunity is a shield from individual liability for "'government officials performing discretionary functions . . . as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Good v. Curtis*, 601 F.3d 393, 400 (5th Cir. 2010) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). "[Q]ualified immunity generally protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). It is "an entitlement not to stand trial or face the other burdens of litigation." *Austin v. Johnson*, 328 F.3d 204, 207 (5th Cir. 2003) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

When a defendant asserts qualified immunity, the plaintiff has the burden to rebut the defense. *Hampton v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007). In the summary judgment posture, the court "'looks to the evidence before it (in the light most favorable to the plaintiff).'" *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).

Courts use a two-step analysis to determine whether qualified immunity applies. "[A] court addressing a claim of qualified immunity must determine first whether the plaintiff has adduced facts sufficient to establish a constitutional or statutory violation." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Second, if a violation has been alleged, the court must determine "'whether [the officers'] actions were objectively unreasonable in light of clearly established law at the time of the conduct in question.'" *Id.* (quoting *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007)). "The defendant's acts are held to be objectively reasonable unless all reasonable officials in the

defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001). "An official is eligible for qualified immunity even if the official violated another's constitutional rights." *Id*. Finally, the objective reasonableness of official action is an issue of law reserved for the court. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999).

It is within the lower court's discretion to decide which prong of the qualified immunity analysis to address first. *Collier*, 569 F.3d at 217 (quoting *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009)). As the *Pearson* Court observed, "there are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." 129 S. Ct. at 818.

III.    Analysis

   A.   Federal Claims

Section 1983 creates a cause of action against those who, while acting under color of state law, violate the plaintiff's constitutional rights. 42 U.S.C. § 1983 (2006). "There is no vicarious or respondeat superior liability of supervisors under § 1983." *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 (5th Cir. 2006). Thus, "[a] plaintiff must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation." *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008) (citing *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999)).

In this case, Plaintiffs concede that "McMillin was not personally involved with Deaton's detainment, beating, arrest or denial of medical care." Pls.' Resp. [128] at 10. So they attempt

to establish causally connected wrongful actions by arguing (1) that McMillin hired Michael Huff, a "rogue" officer who either used or allowed others to use excessive force against Deaton; (2) McMillin's policy regarding initial appearances was unconstitutional; and (3) that McMillin's lack of understanding of the inner workings of the Hinds County Detention Center constituted deliberate indifference. *Id.* at 9, 18.[3]

        1.    Claims Related to Michael Huff

Plaintiffs aver that Huff either used, or allowed others to use, excessive and ultimately deadly force against Deaton. Whether Huff did is a question of fact. Plaintiffs then attempt to pin Huff's conduct on McMillin in two ways. First, they contend that McMillin violated Deaton's constitutional rights by hiring Huff. Second, Plaintiffs allege that McMillin failed to supervise Huff.

While the tests for hiring and supervision claims are somewhat different, both require examination of Huff's *relevant* employment history–dissimilar and unsubstantiated claims are not probative. *Bd. of Cnty. Comm.'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 414 n.1 (1997) (noting error in failing to "connect the background of the particular officer hired . . . to the particular constitutional violation the respondent suffered"); *see also Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 384 n.45 (5th Cir. 2005) (disregarding dissimilar and unsubstantiated allegations in officers's past); *Roberts v. City of Shreveport*, 397 F.3d 287, 294 (5th Cir. 2005) (same); *Gros v. City of Grand Prairie*, 209 F.3d 431, 435 (5th Cir. 2000) (same); *Aguillard v. McGowen*, 207 F.3d 226, 230 (5th Cir. 2000) (same). Thus, while Plaintiffs argue

---

      [3]Plaintiffs twice summarize their positions in this manner, but they also offer other arguments in the body of their memorandum. The Court has considered all arguments. Those not expressly addressed were deemed meritless.

that Huff engaged in a variety of misconduct, the Court focuses only on substantiated accusations of excessive force, of which there was "at least one." McMillin Dep. at 41.

          a.      McMillin's Decision to Hire Huff[4]

Plaintiffs posit that the information McMillin knew, or should have known with more diligent investigation, rendered the decision to hire Huff unconstitutional. To establish a constitutional violation in support of a § 1983 claim, Plaintiffs must show that McMillin acted with deliberate indifference. In the context of a hiring decision, the United States Supreme Court held in *Bryan County*:

> Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute "deliberate indifference."

520 U.S. at 398. Proof that a constitutional deprivation is a "plainly obvious consequence" requires more than "mere probability that any officer inadequately screened will inflict any constitutional injury," *id*. at 412, and requires examination of the specific facts of the officer's history, *id*. at 414 n.1 (noting error in failing to "connect the background of the particular officer hired . . . to the particular constitutional violation the respondent suffered.").

In *Bryan County*, the sheriff hired an individual known to have a history of violence who, shortly after being hired, allegedly employed excessive force. As summarized by the Fifth Circuit following remand, in the two years prior to his employment, the offending officer had been arrested for "assault and battery, resisting arrest, public drunkenness, driving while

---

[4]Although McMillin does not make the argument, the hiring claim is not apparent from the Amended Complaint.

8

intoxicated, possession of false identification, driving with a suspended license, and nine moving traffic violations." *Brown v. Bryan Cnty. Okla.*, 219 F.3d 450, 454 (5th Cir. 2000). Like McMillin, the sheriff in *Bryan County* was apparently aware of these incidents, but "did not inquire into the underlying conduct or the disposition of any of the misdemeanor charges reflected on Burns' record before hiring him." *Bryan Cnty.*, 520 U.S. at 411. The United States Supreme Court found as a matter of law that the applicant's history was not sufficiently analogous to make the use of excessive force a plainly obvious consequence of the hiring decision. *Id.* at 412–13.

Here, Plaintiffs fail to offer sufficient record evidence to make the analysis *Bryan County* requires. Plaintiffs rely entirely on McMillin's deposition testimony to support their contention that Huff had a history of excessive force. But McMillin merely acknowledged "at least one" substantiated claim of excessive force. McMillin Dep. at 41. Plaintiffs cite no other record evidence of Huff's use of excessive force and provide no details of the event(s) McMillin generically acknowledged. This record precludes comparison between Huff's past conduct and the alleged use of force against Deaton–force that was allegedly sufficient to cause death. *See Bryan Cnty.*, 520 U.S. at 413–14 (finding no deliberate indifference where specifics of officer's criminal history were not sufficiently similar to alleged acts); *c.f.*, *Roberts*, 397 F.3d at 294 (rejecting plaintiffs' proffered pattern where it required "an excessively high level of generality"). Thus, Plaintiffs fail to create a question of fact on whether the violation of Deaton's rights was a "plainly obvious consequence of the decision to hire" Huff. *Bryan Cnty.*, 520 U.S. at 398.

Finally, even if McMillin's hiring decision was constitutionally infirm, it was not objectively unreasonable in light of clearly established law. *Thompson*, 245 F.3d at 457. "This inquiry focuses . . . on the specific circumstances of the incident . . . ." *Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 383 n.1(5th Cir. 2009). While finding authority in the exact factual context is not required, "unless the violation is obvious, there must be relevant case law that squarely governs the situation with which the officers were presented and gives fair notice that such conduct would violate the law." *Reyes v. Bridgwater*, 362 F. App'x 403, 408 (5th Cir. 2010) (citations and quotations omitted). Here, Plaintiffs cite no cases supporting their position, and rulings like *Bryan County*, *Davis*, *Gros* and *Aguillard* suggest that McMillin violated no clearly establish laws.

       b.  McMillin's Supervision of Huff

Plaintiffs also suggest that McMillin is liable for failing to prevent Huff from allegedly using excessive force. They cite *Sims v. Adams*, where the Fifth Circuit held "that a complaint alleging that a police supervisor has notice of past culpable conduct of his subordinates and has failed to prevent a recurrence of such misconduct states a § 1983 claim." 537 F.2d 829, 832 (5th Cir. 1976) (citation omitted). *Sims* is inapposite for several reasons.

To begin, a § 1983 claim for failure to supervise or train requires proof that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference" to the plaintiff's constitutional rights. *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009).

Aside from neglecting to identify how McMillin failed to supervise Huff, Plaintiffs have not created a triable issue on the test's third prong–deliberate indifference. Deliberate indifference in a failure to supervise context generally requires proof of "at least a pattern of similar violations *arising from* training [or supervision] that is so clearly inadequate as to be obviously likely to result in a constitutional violation." *Roberts*, 397 F.3d at 292 (reversing denial of qualified immunity) (emphasis added); *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003) (holding that proof of deliberate indifference generally requires a showing "of more than a single instance of the lack of training or supervision causing a violation of constitutional rights") (citing *Thompson*, 245 F.3d at 459). And the "[p]rior instances must point to the specific violation in question; 'notice of a pattern of *similar* violations is required.'" *Valle v. City of Houston*, 613 F.3d 536, 548 (5th Cir. 2010) (citing *Davis*, 406 F.3d at 383) (emphasis added).

Unlike the offending officer in *Sims*, Huff committed no prior misdeeds under McMillin's supervision. *Compare* McMillin Dep. at 43 (describing Huff's performance as "stellar") *with Sims*, 537 F.2d at 831 n.1 (listing similar incidents). Even considering Huff's conduct before McMillin hired him, Plaintiffs fail to prove a pattern of excessive force by Huff having offered evidence of no more than one substantiated claim. *See, e.g.*,*Valle*, 613 F.3d at 547 ("usually a plaintiff must show a pattern of similar violations"). And, the only substantiated claim of excessive force McMillin mentioned is too vague to evaluate. *Id.* at 548 (rejecting pattern evidence and holding that "[s]ome greater level of detail about these prior shootings is required"). Thus, the record is incapable of demonstrating sufficient similarity. *See Lewis v. Pugh*, 289 F. App'x 767, 772–73 (5th Cir. 2008) (affirming finding of qualified immunity for

11

supervisor where officer's prior use of excessive force was not similar to alleged sexual assault). For these reasons, the record fails to create a question of fact on whether McMillin acted with deliberate indifference while supervising Huff. *See, e.g.*, *Davis*, 406 F.3d at 382–83 n.33 (reversing trial court's failure to grant qualified immunity to supervisory defendant).

Finally, even inferring a constitutional violation, the Court must still consider objective reasonableness. The *Sims* court found a cognizable constitutional claim because the supervisor failed to prevent further acts by an officer with a known history of violations. But the *Sims* court twice emphasized that its ruling had no bearing on the defendant's potential claim for qualified immunity. 537 F.2d at 832 n.4. Plaintiffs offer no authority for denying qualified immunity under the facts presented. Given the stringent standard addressed in cases like *Davis* and the lack of record evidence demonstrating notice, the Court finds McMillin is entitled to qualified immunity even if Plaintiffs could demonstrate a violation under the theory addressed in *Sims v. Adams*.[5]

    2.  Failure to Provide Initial Appearance

Deaton never received an initial appearance which, according to Plaintiffs, further delayed proper medical care. Plaintiffs provided no evidence of McMillin's personal involvement in delaying the initial appearance and therefore contend that "McMillin was also well aware that his polices regarding presentment of prisoners for an initial hearing were in violation of clearly established law." Pls.' Resp. [128] at 9, 18.

---

[5]Plaintiffs have not expressly argued for the single incident exception with respect to their failure to supervise claim, but the result would be no different. The exception is "extremely narrow" and has been applied by the Fifth Circuit only once. *Valle*, 613 F.3d at 549. Accordingly, even if Plaintiffs intended this argument, qualified immunity would still protect McMillin because it is not clearly established that the exception would apply.

"Supervisory liability may . . . exist 'without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.'" *Cozzo v. Tangipahoa Parish Council—President Gov't*, 279 F.3d 273, 289 (5th Cir. 2002) (citing *Thompkins*, 828 F.2d at 304). Defendant McMillin testified, however, that pretrial detainees are presented within forty-eight hours to a magistrate, and if this did not occur, it violated policy. McMillin Dep. at 52, 56. Plaintiffs have not identified how this policy violates clearly established law.

If Plaintiffs are suggesting a custom of ignoring the policy, then it is not apparent from their submissions. Equally unclear is McMillin's personal involvement in any custom of delayed initial appearances. Plus, "a constitutionally deficient policy cannot be inferred from a single wrongful act." *Thompkins*, 828 F.2d at 304 (citations omitted). Plaintiffs offer no proof of a pattern of delayed initial appearances.

Finally, Plaintiffs seize on McMillin's statement that does not know why the policy was not followed, suggesting that this proves deliberate indifference. But McMillin's lack of knowledge merely proves the deficiency in Plaintiffs' claim. *See, e.g.*, *O'Quinn v. Manuel*, 773 F.2d 605, 609 (5th Cir. 1985) (holding that supervisors could not be held liable for conduct of police without knowledge of conduct). McMillin is entitled to qualified immunity from the initial appearance portion of the claim under both prongs of the test.

        3.      McMillin's Alleged Lack of Knowledge

Plaintiffs' final argument is that "McMillin's lack of understanding of the inner-workings of the Sheriff's Office and Detention Center, over which he is the chief policymaker, constitutes

a deliberate indifference for the safety and welfare of the prisoners in his charge." Pls.' Resp. [128] at 9, 18. This precise argument is poorly supported in Plaintiffs' submissions and fails to demonstrate the level of personal involvement or knowledge that would be necessary to demonstrate deliberate indifference.

In making this argument, however, Plaintiffs cite *Thompson*, a case addressing supervisory liability of a sheriff for episodic failures to provide medical attention. 245 F.3d at 458–59. It is well established that "pretrial detainees have a constitutional right, under the Due Process Clause of the Fourteenth Amendment, not to have their serious medical needs met with deliberate indifference on the part of the confining officials." *Id.* at 457 (collecting cases). "A prison official shows deliberate indifference [to an inmate's serious medical needs] if 'the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 245 (1983) (recognizing that a pre-trial detainee's rights under the Fourteenth Amendment are "at least as great as the Eight Amendment protections available to a convicted prisoner")).

Under *Thompson*, a failure to supervise or train could result in supervisory liability. 245 F.3d at 459. But the *Thompson* court found that the sheriff–who was unaware of a detainee's serious medical needs–was entitled to qualified immunity and further observed "that deliberate indifference on the part of a policymaker cannot generally be shown from a single violation of constitutional rights." *Id.* at 463.

Here, McMillin was not personally involved in Deaton's medical care, and McMillin has produced extensive written policies and procedures governing the medical care provided to inmates. Additionally, the record evidence shows that Deaton was seen by medical personnel each day he was in custody (although the care may prove to have been deficient). Plaintiffs have not attempted to demonstrate that the policies were unlawful and have not demonstrated McMillin's knowledge or personal involvement in any custom or practice of ignoring the policies. *Brewster*, 587 F.3d at 770. Plaintiffs likewise fail to show a pattern of violations that could support a failure-to-supervise-or-train claim. *Thompson*, 245 F.3d at 463. Thus, to the extent the medical claim is based on McMillin's failure to supervise, it fails both prongs of the qualified immunity test.

Finally, Plaintiffs assert that the failure to provide medical care and the decision to eventually release Deaton to his family "was all done with full knowledge, pursuant to the unofficial policy of McMillin to avoid paying for the medical care of inmates or with complete and deliberate indifference, by Sheriff McMillin." Pls.' Resp. [128] at 15–16. Plaintiffs fail to elaborate on this argument, and the Court has already addressed the care received during detention. If Plaintiffs suggest McMillin violated Deaton's constitutional rights by releasing him from prison to avoid medical expenses, they provided no authority supporting a clearly established right to remain in incarceration for medical purposes.

Regardless, if such an unofficial policy existed, Plaintiffs have failed to direct the Court to record evidence that McMillin was responsible for the policy or the decisions that flowed from it. *See Thompkins*, 828 F.2d at 304 (supervisory liability can be established where the defendant "implemented" the constitutionally invalid policy). Thus, Plaintiffs have failed to

15

demonstrate that McMillin violated Deaton's constitutional rights and have further failed to establish that McMillin violated any clearly established rights. Defendant is entitled to qualified immunity.

### 4. Conspiracy Claim

McMillin moved for summary judgment as to Plaintiffs' § 1985 conspiracy claims because it is legally impossible for members of the Hinds County Sheriff's Department to conspire with themselves. 42 U.S.C. § 1985 (2006). Plaintiffs skipped, and therefore conceded, this argument in their response. The conspiracy claim against McMillin in his individual capacity is due to be dismissed.

### B. State Law Claims

McMillin makes several arguments for immunity from state law claims based on provisions of the Mississippi Tort Claims Act ("MTCA"), Mississippi Code Annotated sections 11-46-1 to 11-46-23. "The MTCA provides the exclusive civil remedy against a governmental employee for acts or omissions which give rise to a suit." *Watts v. Tsang*, 828 So. 2d 785, 791 (Miss. 2002) (quotation marks and citation omitted). Generally, "no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties." *Estate of Johnson v. Chatelain ex rel. Chatelain*, 943 So. 2d 684, 687 (Miss. 2006) (quoting Miss. Code Ann. § 11-46-7(2) (supp. 1991)). There is "a rebuttable presumption that any act or omission of an employee within the time and at the place of his employment is within the course and scope of his employment." Miss. Code Ann. § 11-46-5(3) (2009), *see also Estate of Johnson*, 943 So. 2d at 687. But "if the employee's conduct constituted fraud, malice, libel,

slander, defamation or any criminal offense other than traffic violations," the employee was not acting within the course and scope of employment. *Id.* § 11-46-5(2).

McMillin was acting within the course and scope of his duties when making the policy or supervision decisions at issue in this case. Moreover, Plaintiffs wholly fail to address immunity with respect to state-law claims in their Response. Accordingly, McMillin is immune from personal liability on Plaintiffs' state-law claims. *See Conrod v. Holder*, 825 So. 2d 16, 19 (Miss. 2002) (affirming summary judgment on state-law claims under section 11-46-5 where plaintiff sued sheriff individually on negligent training claim). The Court need not reach McMillin's arguments for immunity based on Mississippi Code Annotated section 11-46-9.

III.  Conclusion

The Court finds that Defendant McMillin's motion for summary judgment as to Plaintiffs' claims against him in his individual capacity should be granted. The stay of this case is lifted and Magistrate Judge F. Keith Ball is directed to enter a new scheduling order in this matter following a status conference. The parties are further instructed to confer and inform the magistrate judge whether the case is in an appropriate posture for settlement conference.

**SO ORDERED AND ADJUDGED** this the 30th day of September, 2010.

                             s/ *Daniel P. Jordan III*
                             UNITED STATES DISTRICT JUDGE