UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

MICHAEL SHANE DEATON, INDIVIDUALLY AND
AS EXECUTOR OF THE ESTATE OF JAMES F. DEATON, JR.,
AND ON BEHALF OF ALL WRONGFUL DEATH BENEFICIARIES
OF JAMES F. DEATON, JR.                                             PLAINTIFFS

V.                                          CIVIL ACTION NO. 3:08-cv-763-DPJ-FKB

MALCOLM MCMILLIN, SHERIFF OF HINDS COUNTY,
MISSISSIPPI, IN HIS OFFICIAL CAPACITY, ET AL.                DEFENDANTS


ORDER

        This § 1983 action is before the Court on Defendant Trudy Bomer's motion for summary

judgment [277].  Plaintiffs responded in opposition, conceding many of their claims.  Having

considered the parties' submissions, the Court finds that Bomer's motion for summary judgment

should be granted in part but otherwise denied.

I.      Background

        On Friday, December 14, 2007, deputies with the Hinds County Sheriff's Department

arrested James F. Deaton, Jr. for being a felon in the possession of a firearm.  He was then

incarcerated in the Hinds County Detention Center ("HCDC") where he was allegedly denied

adequate medical care leading to his death.  Defendant Trudy Bomer works as a sergeant in the

transportation unit of the Hinds County Sheriff's Department.  She came in contact with James

Deaton, an arrestee, at the Hinds County Detention Center on December 18, 2007, after he

returned from his initial appearance before Judge Steven Pickett, who released Deaton on his

own recognizance.  Bomer telephoned Deaton's mother, Johnnie Deaton, and arranged for a

deputy to transport Deaton to meet Johnnie at a local restaurant.  According to Bomer, Deaton

was not free to leave while in the jail.  It is undisputed that Deaton was not well at the time
Bomer encountered him.

Plaintiffs concede that Bomer is entitled to summary judgment as to all state-law claims
and all federal claims other than those reflected in Count III (violation of substantive due
process), Count IV (violation of procedural due process), and Count VII (denial/delay of
adequate medical treatment).  Pls.' Resp. [291].  Summary judgment is therefore granted as to
the conceded claims.  As for those remaining in dispute, Bomer contends that she is entitled to
qualified immunity.[1]

II.     Standards

"Qualified immunity protects government officials performing discretionary functions
from civil damages liability if their actions were objectively reasonable in the light of then
clearly established law."  *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 488 (5th Cir. 2001).  When a
defendant raises qualified immunity, the burden is on the plaintiff to "demonstrate the
inapplicability of the defense."  *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir.
2002).

To determine if an individual is entitled to qualified immunity, the Court applies a
two-step analysis. "[A] court addressing a claim of qualified immunity must determine first
whether the plaintiff has adduced facts sufficient to establish a constitutional or statutory
violation."  *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citing *Saucier v. Katz*,

---

[1]The Court provided the more specific facts giving rise to this action in a previous Order
[134].  That Order is incorporated by reference.

533 U.S. 194, 201 (2001)).  "If not, our analysis ends."  *Freeman v. Gore*, 483 F.3d 404, 410–11

(5th Cir. 2007).  The second prong requires the Court to consider:

> whether the defendant's actions were objectively unreasonable in light of clearly
> established law at the time of the conduct in question. To make this
> determination, the court applies an objective standard based on the viewpoint of a
> reasonable official in light of the information then available to the defendant and
> the law that was clearly established at the time of the defendant's actions.

*Id*. at 411.  These issues raise questions of law that are normally decided before trial.  *Hunter v.*

*Bryant*, 502 U.S. 224, 228 (1991).  But in the Fifth Circuit, the issue is decided by the jury if

disputed issues of material fact preclude a pretrial ruling.  *See Sikes v. Gayton*, 218 F.3d 491,

493-94 (5th Cir. 2000).

III.    Analysis

      Plaintiffs argue that Bomer violated Deaton's constitutional rights by denying (or

delaying) necessary medical care.  More precisely, they contend that he had been beaten and

suffered from alcohol withdrawal or delirium tremens, DTs.  The standard for addressing such

claims is well established:

> The Fourteenth Amendment requires the state to provide for the "basic human
> needs" of pretrial detainees, including the right to adequate medical care.  *See
> Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996).   In order to establish a
> constitutional violation of this right, a detainee must show that the defendant
> acted with deliberate indifference to his serious medical needs, meaning that the
> defendant was subjectively aware of a substantial risk of serious harm and failed
> to take reasonable measures to abate that risk.  *Id.* at 647–48.   In other words, a
> detainee must show that the defendant "refused to treat him, ignored his
> complaints, intentionally treated him incorrectly, or engaged in any similar
> conduct that would clearly evince a wanton disregard for any serious medical
> needs."  *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).   A delay in
> providing medical care is not a violation of this constitutional right unless it
> results in substantial harm.  *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir.
> 1993).

*Lacy v. Shaw*, 357 F. App'x 607, 609–10 (5th Cir. 2009).  The Fifth Circuit has established that "delirium tremens is a serious medical need."  *Thompson v. Upshur Cnty., Tex*, 245 F.3d 447, 457 (5th Cir. 2001).  In the present case, questions of fact preclude summary judgment in Bomer's favor.

In her Reply, Bomer offers a fact-based argument that Deaton's condition was not sufficiently severe to alert a reasonable officer to the need for immediate medical care.  But the facts are disputed.  At a minimum, Bomer acknowledges that Deaton was speaking nonsensically, was not "clear-minded," and was confused and disoriented.  Bomer Dep. at 26, 29.  She also testified that he was non-responsive to her questions.  Bomer Dep. Vol. II at 69. According to Bomer, she concluded that "he was a mental case . . . elderly, feeble, mental case" and told Deaton's mother he was in a "bad mental state" when she called her to arrange transportation.  Bomer Dep. at  27, 33.  As to alleged physical injuries, Bomer said she would have seen any bruising because Deaton wore a short-sleeve shirt, but that she observed none.  *Id.* at 54.  Bomer likewise denied signs of DTs, testifying that she had seen individuals experiencing alcohol withdrawals before, but she did not see those symptoms in Deaton—he was not throwing up,"curled up in the fetal position," or showing any signs of being physically sick.  *Id.* at 36, 38. Finally, Bomer argues that Deaton had just been released from a medical examination alleviating the need for her to request medical assistance.

If believed, these facts might be insufficient to show deliberate indifference.  But Plaintiffs offer countervailing evidence.  Starting with the release from medical personnel, Bomer conceded in her deposition that she does not know whether she was told about the alleged medical release before Deaton left her custody.  *Id.* at 51.  As to his condition, Bomer saw

4

Deaton after he was returned from court.  According to the presiding judge, the Honorable

Steven Pickett, deputies informed him that Deaton was not capable of appearing.  Pickett then

visited Deaton in the jail and observed him "chanting and appear[ing] to be confused . . . ."

Picket Dep. at 28.  Pickett perceived that Deaton had alcohol issues and concluded that the

handgun charges should be dropped because Deaton was incapable of proceeding.  In addition,

Plaintiffs point to the Incident Report prepared by Terrance F. Lewis, the deputy who transported

Deaton to meet his mother, wherein he states, "I waited for Mr. Deaton to return from medical,

so that he could be dressed for release.  I was informed that Mr. Deaton . . . was going through

detox."  Plaintiffs' Resp. [291] Ex. V.  A few hours after Bomer encountered Deaton, he

presented at CMMC in critical condition.  He remained in ICU for a week where he underwent

dialysis for acute renal failure.  Test results further confirmed severe malnutrition and metabolic

acidosis and delirium tremens.  Bomer argues that none of these facts are relevant to the time she

saw him, but Deaton's condition immediately before and immediately after he was in Deaton's

presence provides circumstantial evidence of his condition while in her presence.

Dispute also exists with respect to what Bomer told Deaton's mother, Johnnie Deaton,

about his condition.  Johnnie Deaton testified that during the course of the telephone call, Bomer

asked, "Did he have a knot on his head the last time you saw him?" and then stated, "Well, you

need to come get him.  We don't – he's in pretty bad shape.  We don't want to put him out on the

street."  J. Deaton Dep. at 8.  Johnnie testified that she asked Bomer, "'Are you telling me I need

to get him to a hospital?' And she said, 'Yes.'" *Id.* at 10.  Johnnie explained that when she saw

Deaton he had knots on the side and back of his head and bruising to his face, shoulder, and

arms, was bleeding from his head and arm, and talking incoherently, so she took him straight to
CMMC.  J. Deaton Dep. at 12, 13, 14.[2]

By her own testimony, Bomer came in contact with Deaton while he was still in custody
and not free to leave.  She further testified that, had he been in an emergent condition when she
saw him, she would have requested medical evaluation.  If the jury believes Johnnie Deaton's
testimony, then it would support the claim that Bomer knew Deaton needed immediate medical
care.  Instead, he was required to wait for transportation from the jail and was then delivered to
his mother at a restaurant.  The decision delayed his care at the CMMC emergency room.
Viewing the facts in a light most favorable to Plaintiffs, the Court finds a question of fact as to
whether Deaton was in immediate need of medical care and whether Bomer displayed deliberate
indifference to Deaton's condition.

As for the second prong of the qualified immunity analysis, the right "to receive medical
care during pretrial confinement was clearly established at the time of [Bomer's] alleged
misconduct."  *Mace v. City of Palestine*, 333 F.3d 621, 625 (5th Cir. 2003) (internal punctuation
omitted) (citing *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996) (en banc)).  "A
pretrial detainee's right to medical care is violated if an officer acts with deliberate indifference
to a substantial risk of serious medical harm and resulting injuries."  *Id.* (citation and quotations
omitted).  Delirium tremens is a serious medical need.  *Thompson*, 245 F.3d at 457.  Viewing the
facts in a light most favorable to Plaintiffs, a question of fact exists as to whether Bomer's acts
were objectively unreasonable in light of clearly established law.

---

[2]The parties have submitted a substantial record, and this recitation is not intended as an
exhaustive review of the potentially relevant facts or supporting evidence.

IV.     Conclusion

As stated, Plaintiffs conceded or failed to address most of their causes of action, and those claims are hereby dismissed.  But for the reasons stated, the Court finds that Defendant Bomer's motion for summary judgment should be denied as it relates to Plaintiffs' claim that she violated Deaton's right to medical care.

**SO ORDERED AND ADJUDGED** this the 6th day of February, 2012.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE