UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

MICHAEL SHANE DEATON, INDIVIDUALLY AND
AS EXECUTOR OF THE ESTATE OF JAMES F. DEATON, JR.,
AND ON BEHALF OF ALL WRONGFUL DEATH BENEFICIARIES
OF JAMES F. DEATON, JR.                                                                        PLAINTIFFS

V.                                                            CIVIL ACTION NO. 3:08cv763-DPJ-FKB

MALCOLM MCMILLIN, SHERIFF OF HINDS COUNTY,
MISSISSIPPI, IN HIS OFFICIAL CAPACITY, ET AL.                                 DEFENDANTS


ORDER

This § 1983 action is before the Court on Defendant Hinds County, Mississippi's Motion for Summary Judgment [285], and Plaintiffs' motion for partial summary judgment on the duration of confinement claim [273]. The parties have responded in opposition, with Plaintiffs conceding many of their claims. Having considered the parties' submissions, the Court finds that Hinds County's motion for summary judgment [285] should be granted in part and denied in part, and that Plaintiffs' motion for partial summary judgment [273] should granted.

I.      Background

On Friday, December 14, 2007, deputies with the Hinds County Sheriff's Department arrested James F. Deaton, Jr. for being a felon in the possession of a firearm. He was then incarcerated in the Hinds County Detention Center ("HCDC") where he was allegedly denied adequate medical care leading to his death. Deaton's beneficiaries brought this suit, and after extensive discovery, Hinds County moved for summary judgment. In response to the motion, Plaintiffs conceded all of their claims with the exception of their claims under 42 U.S.C. § 1983

for (1) delay/denial of medical treatment and (2) unlawful duration of confinement.  The Court has personal and subject matter jurisdiction and is prepared to rule.[1]

II.     Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact.  *Id.* at 323.  The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."  *Id*. at 324.  Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial.  *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory

---

[1] The Court provided the more specific facts giving rise to this action in a previous Order [134].  That Order is incorporated by reference.

facts." *Little*, 37 F.3d at 1075.  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

III.    Analysis

    A.    Delay/Denial of Medical Treatment

Plaintiffs claim that Hinds County is liable under § 1983 for delaying or denying medical care for Deaton's delirium tremens ("DTs").  "Pretrial detainees have a constitutional right to medical care and protection from harm during their confinement." *Brumfield v. Hollins*, 551 F.3d 322, 327 (5th Cir. 2008).  As a pretrial detainee, Deaton's right to medical care "flow[ed] from both the procedural and substantive due process guarantees of the Fourteenth Amendment. *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc).  But "there is no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care." *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001).  Delirium tremens is a serious medical condition for which treatment is required. *See Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001).

In *Monell v. New York City Department of Social Services*, the United States Supreme Court held that municipalities are not liable under § 1983 on a theory of respondeat superior. 436 U.S. 658, 694–95 (1978).  Thus, the court "decided that a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*).  "It is only when the execution of the government's policy or custom . . . inflicts the injury that the municipality may be held liable under § 1983." *Id.* (external quotation omitted).

As an initial point, there is more than one way to pursue a § 1983 medical treatment claim. The appropriate standard first depends on whether the alleged unconstitutional conduct is a "condition of confinement" or "episodic act or omission." *See Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc). In this case, Hinds County characterizes Plaintiffs' allegations as best fitting within the episodic act category, and Plaintiffs' responsive memorandum is silent on the issue. In the episodic act context, "an actor is usually interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom or rule (or lack thereof) of the municipality that permitted or caused the act or omission." *Flores v. Cnty. of Hardeman, Tex.*, 124 F.3d 736, 738 (5th Cir. 1997).

"To succeed in holding a municipality liable under these standards, the plaintiff must establish not only that a municipal employee acted with subjective deliberate indifference but also that the employee's act resulted from a policy or custom adopted or maintained by the municipality with objective deliberate indifference to the plaintiff's constitutional rights." *Garcia v. Cnty. of El Paso*, 79 F. App'x 667, 669 (5th Cir. 2003) (citing *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999)). "Deliberate indifference is more than negligence or even gross negligence." *Valle v. City of Houston*, 613 F.3d 536, 547 (5th Cir. 2010).

Assuming, without deciding, that Plaintiffs have identified an official who acted with subjective deliberate indifference, they have not shown a policy or custom of denying treatment to detainees with DTs that the County adopted with objective deliberate indifference. First, Plaintiffs have not suggested an official "policy" in the form of "duly promulgated policy statements, ordinances or regulations." *See Piotrowski*, 237 F.3d at 579 (defining official

policy). So the question is whether Plaintiffs have shown a policy evidenced by a custom. To do so, they must show a "persistent and widespread practice" that "is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id.*

In this case, the County adopted extensive medical policies, and Deaton was seen by medical personnel each day of his incarceration. Those policies specifically addressed procedures for detecting and treating inmates exhibiting symptoms of DTs. In fact, Plaintiff maintains that the medical officers failed to follow the County's own policies and standard practices regarding such treatment. The record lacks evidence suggesting that any other inmates were denied treatment for DTs, and there is simply no evidence of a widespread policy that can be attributed to Hinds County as proof of objective deliberate indifference.

Plaintiffs make a more precise argument, however, when they contend that Hinds County should be liable for failing to train its employees to detect and treat DTs. A § 1983 failure-to-train claim "can only yield liability against a municipality where that city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." *City of Canton*, 489 U.S. at 392. To meet this standard, Plaintiffs:

> must show that "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390, 109 S. Ct. 1197. Usually a plaintiff must show a pattern of similar violations . . . .

*Valle*, 613 F.3d at 547 (other citations omitted). Moreover, proof "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city . . . ." *City of Canton*, 489 U.S. at 390–91 (citations omitted). "Neither will it suffice to prove that an injury or

accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct." *Id*. at 391.

As stated, HCDC had policies for handling inmates experiencing alcohol withdrawal. Pls.' Resp. Ex. JJ.  That policy provided for escalating care depending on the symptoms presented, and it expressly listed the symptoms the prison officials were expected to monitor.  *Id.* HCDC also had policies for training its employees.  Health Services Administrator Ruth Wyatt testified that, as an RN, she received training in alcohol withdrawal and would conduct a "yearly in-service with the staff to go over signs and symptoms" of alcohol withdrawal.  Defs.' Mot. Ex. 14, Wyatt Dep. at 11, 12.

Plaintiffs acknowledge the policy, but contend that the County failed to train front-line officers to follow it.  They argue specifically "that none of the medical officers present were knowledgeable or trained in how to evaluate alcohol withdrawal patients' signs and symptoms." Pls.' Mem. [308] at 23.  Plaintiffs base this statement largely on the testimony of two medical officers, Cassandra Coleman and Mikimbe Harris.  The argument is not supported.

According to Coleman, she was trained to take vital signs but not interpret them, Coleman Dep. at 21, and she could not remember training specific to DTs.  *Id*. at 27.  Plaintiffs cite this testimony as proof that no one was trained, but Coleman refused to speculate as to the training of others.  For example, Coleman would not say what level of training co-worker Dolores Warden received.  *Id.* at 21.  Plaintiffs describe Warden as a medical officer, which is not clear from the record, but Coleman believed her to be an emergency medical technician ("EMT").  *Id*.  Regardless, Warden testified that she was aware of the County's written alcohol

withdrawal protocol in December 2007, demonstrating that officers were trained. Warden Dep. at 41.

As for Harris, she too could not remember her training, but she then described the HCDC's policies for monitoring DTs. Harris Dep. at 59. Plus, Harris offered unrebutted testimony that medical officers work with and under the direction of registered nurses ("RN") and licensed practicing nurses ("LPN"). As she put it, the medical officers and the nurses "assess [inmates] together." *Id*. at 32. According to Harris, the nurses have "greater training" than the medical officers, *id.* at 32, and "[t]he medical officer follows orders from the nurse." *Id.* at 57. Specific to this case, Harris testified that she assessed Deaton with a nurse. *Id*. at 32. Plaintiffs have not identified the nurse or his/her level of training, and they have not addressed the level of training the RNs and LPNs were generally given. Plaintiffs also rely on Harris's testimony that Deaton's chart fails to reflect periodic assessments as required by the policies. *Id.* at 51. But there is no respondeat superior liability under § 1983, and Harris's testimony demonstrates her knowledge that the County had a policy for monitoring. *Id*. at 59 (discussing the "procedure" for monitoring); *see also* Warden Dep. at 41 (same).

Other evidence further diminishes the claim of deliberate indifference. For example, the County noted in its motion that General Order 92-04-18 required mandatory training programs conducted by a training coordinator charged with ensuring that all employees met minimum standards under state law. *See* Defs.' Mot. Exs. 31, 32, 33. Where the legal minimum is met, a plaintiff must affirmatively demonstrate that the legal minimum training is insufficient. *See Benavides v. Cnty. of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992); *see also Abshure v. Prator*, 392 F. App'x 267, 270 (5th Cir. 2010) (rejecting failure to train claim because sheriff's employees

met state's legal minimum for training and plaintiff made no showing that legal minimum was insufficient). No such showing has been made.

Viewed in a light most favorable to Plaintiffs, they have not shown deliberate indifference on the part of the County. Written policies directly addressed not only treatment but training. That two lower-level officers could not remember their training prior to 2007 fails to demonstrate that no training occurred, especially when one of the two nevertheless described the standard procedures and other witnesses explained that they had been trained. Moreover, the record fails to demonstrate a lack of training for the RNs and LPNs with whom the medical officers were paired.

Merely showing that certain officers were not trained or that "better or more training" would have prevented injury is not sufficient to establish that the County was deliberately indifferent. *City of Canton*, 489 U.S. at 390–91. This is especially so when—as in this case—there is no suggestion of a pattern of similar violations. *Valle*, 613 F.3d at 547. Thus, the record fails to reflect that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390. Plaintiffs inadequate medical care claim against Hinds County should be dismissed.

    B.    Duration of Confinement

Plaintiffs also claim that Hinds County violated Deaton's Fourth Amendment rights by detaining him for longer than 48 hours without a judicial determination of probable cause. Both

parties seek summary judgment on this issue [273, 285]. The material facts are not disputed, and Plaintiffs should prevail.

Deaton was arrested without a warrant. As such, he was entitled to a "prompt" probable cause determination by a judicial officer. *Gerstein v. Pugh*, 420 U.S. 103, 124–25 (1975). In *County of Riverside v. McLaughlin*, the United States Supreme Court resolved a circuit split as to the meaning of "prompt" under *Gerstein*. 500 U.S. 44, 55 (1991). Riverside County had a policy of providing a combined arraignment and probable cause determination within 48 hours of arrest—not counting weekends or holidays. *Id.* The plaintiff claimed that the exclusion of weekends and holidays invalidated the policy. The Court adopted the following test:

> Where an arrested individual does not receive a probable cause determination within 48 hours . . . the arrested individual does not bear the burden of proving an unreasonable delay. Rather, the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance. The fact that in a particular case it may take longer than 48 hours to consolidate pretrial proceedings does not qualify as an extraordinary circumstance. *Nor, for that matter, do intervening weekends*. A jurisdiction that chooses to offer combined proceedings must do so as soon as is reasonably feasible, but in no event later than 48 hours after arrest.

*Id.* at 57 (emphasis added). The 48 hours runs from the time the suspect is arrested until a judicial officer makes a probable cause determination. *Id.* at 56. Jurisdictions offering hearings within 48 hours are "immune from systemic challenges." *Id.* Those that do not are not. *Id.*

In the present case, Deaton was detained at 10:00 p.m. on Friday, December 14. He was booked into HCDC at 6:30 a.m. on Saturday, December 15. On Monday, December 17, County Court Judge William Barnett signed a bench warrant based on the arresting officer's affidavit, and Deaton was re-booked at 9:30 a.m. Judge Barnett's probable cause determination stopped the clock with respect to the delay in obtaining a probable-cause determination. *See*, *e.g.*, *Doss*

*v. Burt*, No. 01-10382-BC, 2006 WL 680836, at *20 (E.D. Mich. Mar. 14, 2006) (holding that 48 hour period ended when judge issued a post-arrest arrest warrant based on probable cause). But Judge Barnett's finding occurred after the 48-hour period expired. Thus, although the delay was not *per se* unconstitutional, Hinds County has the burden to demonstrate "a bona fide emergency or other extraordinary circumstance." *McLaughlin*, 500 U.S. at 57. Hinds has not met its burden.

According to the County, a probable cause hearing could not occur within 48 hours because its courts are closed on the weekends. The County anchors the argument in the statement from *McLaughlin* that courts must consider unavoidable delays such as "where no magistrate is readily available." *Id*. at 57. But this language appears in the section of *McLaughlin* that discusses the constitutionality of hearings occurring *within* 48 hours. As the Court noted, a hearing might occur within 48 hours and still violate *Gerstein*. Plaintiffs have the burden of proving such a claim, and courts must remember that some delays are unavoidable—like the availability of a magistrate. *Id*.

The next paragraph of *McLaughlin* addresses cases—like this one—where the hearing occurs more than 48 hours after arrest. When that occurs, the defendant must show "a bona fide emergency or other extraordinary circumstance." *Id*. The County has offered no record evidence to meet this standard. It has not, for example, offered any evidence that it attempted to find a magistrate within the 48 hours. Instead, as was the case in *McLaughlin*, the County has excluded weekends from the 48 hour calculation. *See* Van Egmond Dep. at 47–48. But *McLaughlin* forecloses the argument that intervening weekends "qualify as an extraordinary circumstance." *Id*. Thus, based on the undisputed record, Deaton's Fourth Amendment rights

were violated. *See Alkire v. Irving*, 330 F.3d 802, 814 (6th Cir. 2003) (holding that weekend closing of courthouse was not an extraordinary circumstance).

Even assuming a violation, "cities are not liable for constitutional violations committed by city employees unless those violations result directly from a municipal custom or policy." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010) (citations omitted). As the Fifth Circuit often notes, official policy includes "a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Id.*

According to Hinds County, this was an episodic act—not a systemic issue—as demonstrated by Sheriff Malcolm McMillin's testimony that obtaining a probable-cause determination longer than 48 hours after an arrest violates County policy. *See* McMillin Dep. at 52. But McMillin did not stop there. When asked about detainees arrested on weekends, he testified: "We have difficulty with that since it's hard to find a judge on the weekend." McMillin Dep. at 52. Again, there is no evidence of any such effort in this case, and the testimony demonstrates the policymaker's knowledge of the practice. The County's Rule 30(b)(6) designee, Rick Van Egmond, likewise described the County's custom when he testified that probable cause affidavits are filed on Mondays because the courthouse is closed on weekends. Van Egmond Dep. at 45–47. Thus, according to him, the 48 hours begins to run from the filing of an affidavit on Monday morning. *Id.* at 47–48.[2]

---

[2] This testimony contradicts the holding in *McLaughlin* and brings the County's policy directly in line with the invalidated policy in that case.

In sum, the County's policymaker and its 30(b)(6) designee offered unrebutted testimony of a widespread practice that was the "moving force" behind the alleged constitutional violation. *Rivera v. Houston Indep. Sch. Dist*, 349 F.3d 244, 249 (5th Cir. 2003). As such, Defendant's motion on this issue [273] is denied, and Plaintiffs' motion for partial summary judgment [285] is granted to the extent that liability has been established with respect to the *McLaughlin* claim.[3]

II. Conclusion

For the reasons given, the Court finds that Hinds County's motion for summary judgment [285] should be denied as to Plaintiffs' claims regarding the alleged delay in providing a proximate cause hearing and granted in all other respects. Plaintiffs' motion for partial summary judgment [273] is granted.

**SO ORDERED AND ADJUDGED** this the 6th day of February, 2012.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

---

[3]Two loose ends can be quickly tied. First, Plaintiffs also complained that Defendants violated Mississippi Uniform Circuit and County Court Rule 6.03 which states: "Every person in custody shall be taken, without unnecessary delay and within 48 hours of arrest, before a judicial officer or other person authorized by statute for an initial appearance." Defendants focused heavily on this claim in their submissions, but Plaintiffs paid it little attention noting that it does not serve as the sole basis for their duration of confinement claim. Absent a substantive response, Plaintiffs appear to have waived the argument. In any event, an alleged violation of this state-court rule would not implicate § 1983, "because § 1983 is only a remedy for violations of federal statutory and constitutional rights." *Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005). And to the extent the alleged violation is cognizable under state law, Plaintiffs conceded "[a]ny and all claims pursuant to state law." Pls.' Mem. [308] at 17.

Second, the County argued that the confinement claim is precluded by *Parratt v. Taylor,* 451 U.S. 527 (1981) and *Hudson v. Palmer,* 468 U.S. 517 (1984). But it offered neither an explanation nor analogous authority. The procedures by which the officers acted were unconstitutional, and the County has not addressed adequate state remedies. Absent more guidance, the Court finds that the *Parratt/Hudson* defense has not been established.